Mr. Daniel Ross c/o Fort Smith Police Department Attn: Kevin D. Lindsey, Chief of Police 100 South 10th Street Fort Smith, Arkansas 72901
Dear Mr. Ross:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B) (Supp. 2009), for my opinion concerning the Fort Smith Police Department's decision to release certain records in response to a request under the Arkansas Freedom of Information Act ("FOIA"), A.C.A. § 25-19-101 to-109 (Repl. 2002 Supp. 2009). The records pertain to your former employment as a police officer with the Department. The Department has received a request under the FOIA for documentation related to your termination, which has been the subject of news reports. You have provided me with copies of the records that the custodian intends to release with certain redactions, and you have expressed your objection to the disclosure of the records.
RESPONSE
My duty under A.C.A. § 25-19-105(c)(3)(B) is to determine whether a custodian's decision regarding the disclosure of employee-related records is consistent with the FOIA. In the present case, the custodian has determined that the requested documents are subject to release under the FOIA's test for "employee evaluation or job performance records," after certain redactions are made. Although the categorization of each of the records at issue as an "evaluation or job performance record" is not entirely clear from the face of several of the records, I have no reason to question the custodian's determination in that regard. As noted below, this office has consistently opined that "employee evaluation or job performance records" include internal investigation records that have been generated at the *Page 2 
behest of the supervisor in the course of investigating an employee's conduct for the purpose of evaluating the employee. You clearly were the subject of an internal investigation, and I assume that the custodian is aware of the previous Attorney General opinions regarding the test for evaluation and job performance records. Accordingly, I will assume the correctness of the custodian's apparent determination that all of the records in fact constitute "evaluation or job performance records" under the FOIA.
With the foregoing in mind, it is my opinion that the custodian's decision is consistent with the FOIA. As explained further below, the documents in my opinion meet the test for release of employee evaluation or job performance records. With regard to the redactions, although I lack sufficient information to definitively opine in this respect, it appears from the face of the records that the information is likely specifically shielded by separate exemptions under the FOIA
DISCUSSION:
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2009).
Given your former status as a public employee, I believe your employment-related documents clearly qualify as "public records" under this definition. Accordingly, the requested documents that relate to your termination can only be withheld if an exception prohibits their disclosure. As one of my predecessor noted: "If records fit within the definition of `public records' . . ., they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific *Page 3 
exemption in that Act or some other pertinent law." Op. Att'y Gen. 1999-305. See also Arkansas Gazette Company v. Goodwin,304 Ark. 204, 801 S.W.2d 284 (1990); Legislative Joint AuditingComm. v. Woosley, 291 Ark. 89, 722 S.W.2d 581 (1987).
It appears that the pertinent exemption in this instance is the one for "employee evaluation or job performance records." A.C.A. § 25-19-105(c)(1). The FOIA does not define these terms, but this office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. E.g., Op. Att'y Gen. Nos. 2006-035; 2005-030; 2004-211; 2003-073; 1998-006; 1997-222; 1995-351; 1994-306; 1993-055. This includes internal investigation records that have been generated at the behest of the employee's supervisor in the course of investigating the employee's conduct. See
Op. Att'y Gen. Nos. 2008-135 (and opinions cited therein), 2008-078, and 2007-311. As stated in Opinion 2008-135: "[D]ocuments created by or at the behest of supervisors such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, letters related to promotions and demotions, and records that were generated as part of an investigation of allegations of the misconduct and that detail incidents that gave rise to such allegations generally fall within the category of "employee evaluations or job performance records.'" Transcriptions of interviews taken under such circumstances are also properly classified as "job performance records." See Op. Att'y Gen. 2008-078, 2003-072, 2002-326, 2001-144, 2000-231, and 2000-174. It should be emphasized that to fall within this classification, the record must have been created for the purpose of evaluating the employee. E.g., Op. Att'y Gen. Nos. 2006-038; 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT, 196 (m m Press, 4th ed. 2004).
"Employee evaluation or job performance records" are releasable only if the following three conditions have been met:
 1. There has been a final administrative resolution of any suspension or termination proceeding; *Page 4 
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1) (Supp. 2009).
Employee evaluation or job performance records cannot be released unless each prong of this test has been met. Applying the test to the documents at issue, I note with regard to the first prong that because you were a probationary officer with the Department, you have no right of appeal. The termination decision is therefore final. Additionally, it seems clear that the records meet that portion of the test requiring that they "formed a basis" for the termination decision. The custodian has determined that this is true as a factual matter, indicating that this prong is met.Accord Op. Att'y Gen. 2008-049 (and opinions cited therein). It also bears noting that the issue of whether requested records "formed a basis" for suspension or termination is generally interpreted to mean that the records in question reflect or detail the incidents or conduct that led to the suspension or termination.E.g., Op. Att'y Gen. Nos. 2002-158 and 2001-144.
The remaining question under subsection 25-19-105(c)(1) that will determine whether the records should be released is whether there is a "compelling public interest" in their disclosure. The FOIA at no point defines the phrase "compelling public interest," but two leading commentators on the FOIA have provided some guidelines for making the factual determination whether such an interest exists.See THE ARKANSAS FREEDOM OF INFORMATION ACT, supra. The authors state, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Id. at 205. They further observe: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . ." The commentators point out, and I agree, that "the mere fact that an employee has been suspended or terminated does not mean that the records should be made public[.]" Id. at 204. Additionally, the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 206 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue."). However, and in my view particularly significant for purposes of the *Page 5 
specific records at hand, Professors Watkins and Peltz note that "[i]n some cases, . . . rank is unrelated to importance" — a proposition they illustrate by suggesting that "[t]he public has a great interest in the performance of police officers and other law enforcement officials, and in this case the "cop on the beat" is just as important as the chief of police."Id. at 207. Accord Op. Att'y Gen. 2005-162 (opining that a police officer's rank might in certain instances be unrelated to the public interest in the disclosure of documents relating to his conduct.) See also Op. Att'y Gen. 2005-175.
In determining what documents to disclose, therefore, I believe it is appropriate, and indeed perhaps necessary, to consider the potential public impact of the misconduct at issue, irrespective of an employee's rank within the Fort Smith Police Department. In this regard, I note that the records you have enclosed with your request reflect that your termination from employment as a probationary officer occurred as a result of the violation of rules aimed at conduct which manifestly could undermine the public trust and/or compromise public safety and the safety of other Department employees. Accordingly, it seems clear that the "compelling public interest" standard is met with respect to the records in question. Compare Op. Att'y Gen. 1997-400. Because the other two conditions under § 25-19-105(c)(1) for release of the records have also been met, the custodian's decision to release the records is in my opinion consistent with the FOIA.
As a final matter, some mention should be made of the redactions that have been made from the records at issue. I will note in this regard that the partial release of information contained in public records is specifically contemplated by the FOIA's mandate that "any reasonably segregable portion of a record shall be provided after deletion of the exempt information." A.C.A. § 25-19-105(f)(2) (Supp. 2009). Thus, as I have previously had occasion to note, where, as here, the test for the release of employee evaluation or job performance records has been met, it may nevertheless be necessary to redact information specifically shielded by separate exemptions in the FOIA. Op. Att'y Gen. 2007-307 at n. 1. It appears in this instance that the custodian has determined that redactions are necessary to comply with the law enforcement investigation exemption, A.C.A. § 25-19-105(b)(9) (Supp. 2009), and the exemption protecting the identities of undercover law enforcement officers, A.C.A. § 25-19-105(b)(10) (Supp. 2009). I will note in this regard that the law enforcement investigation exemption protects records that are part of a continuing, ongoing investigation. See Martin v. Musteen,303 Ark. 656, 660, 799 S.W.2d 540 (1990) (recognizing the protectability of records of *Page 6 
police investigations that are "continuing and sensitive" in nature) and Op. Att'y Gen. 2006-094 (explaining that a criminal investigative file, including confidential informant interviews, will be exempt from public inspection as long as the investigation is ongoing.) With regard to the exemption pertaining to undercover officers, this provision exempts from disclosure the "identities of law enforcement officers currently working undercover with their agencies and identified in the Arkansas Minimum Standards Office as undercover officers." A.C.A. § 25-19-105(b)(10)(A) (Supp. 2009). The exemption extends to information that, taken together, could conceivably identify undercover officers contrary to this subsection. See Op. Att'y Gen. 2007-070.
It is the responsibility of the custodian of records to determine which, if any, portions of the records fall, as a factual matter, within an exemption, subject of course to judicial review. While I lack sufficient information to definitively opine regarding the correctness of the redactions in this instance, it appears from the face of the records that the information is likely specifically shielded by separate exemptions under the FOIA
In sum, therefore, the custodian's decision is consistent with the FOIA, in my opinion.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
DM:EAW/cyh